75163, 75164. HARRISON v. DORSEY; and vice versa.
(363 SE2d 151)

BANKE, Presiding Judge.

Dorsey sued Harrison in contract to recover a commission allegedly owed him as the result of a real estate purchase Harrison had made. This is the second appearance of the case before this court. The first appeal was from a judgment entered in favor of Harrison at the conclusion of a non-jury trial, based on a factual determination by the trial court that no contract had existed between the parties. We reversed that judgment and remanded the case for a new trial, holding that an agreement to pay a commission was implied as a matter of law from the evidence regarding the parties' conduct. *Dorsey v. Harrison*, 171 Ga. App. 774, 779 (320 SE2d 881) (1984).

Upon the return of the case to the trial court, Dorsey moved for summary judgment in reliance upon the transcript of the previous trial and the language of our prior decision. That motion was denied, and the case once again proceeded to trial, this time before a jury. Harrison once again prevailed; however, based on the prior decision of this court, the trial judge granted a subsequent motion by Dorsey for judgment notwithstanding the verdict. Harrison appeals that ruling. Dorsey cross-appeals, enumerating as error the denial of his motion for summary judgment.

The salient facts are undisputed. Harrison located a house he was interested in purchasing and inquired of certain neighbors, the Glenns, for information regarding its ownership. The Glenns informed Harrison that the house belonged to Mrs. Mary Close and suggested that he seek the assistance of their son Lewis, who was the sales manager of a real estate firm owned and operated by Dorsey, in ascertaining whether Mrs. Close might be interested in selling. Harrison did so, whereupon Lewis Glenn contacted Mrs. Close and learned from her that she would be willing to sell the property for a "net" price of $450,000. Glenn communicated this information to Harrison, informing him that the addition of 6 percent sales commission to this asking price would bring the total purchase price to $477,000. Harrison testified that he thought $477,000 was "too much money" but acknowledged that he nevertheless instructed Glenn to arrange for him to see the house. Glenn made such arrangements, and Mr. and Mrs. Harrison subsequently viewed the house in his company.

As a result of further discussions with Glenn at the time of the showing, Harrison came to the realization that Glenn expected him to pay the 6 percent commission on the sale. In response, he told Glenn, "I have a problem with that"; and from that point on he had no further dealings with Glenn in connection with the transaction but negotiated with the seller directly. Harrison ultimately purchased the house for $400,000. At that time, he tendered a check to Dorsey in the

amount of $5,000 as payment for Glenn's services; however, that check was returned uncashed. In the present action, Dorsey, as plaintiff, has declined to seek any recovery for Glenn's services on the basis of quantum meruit, electing instead to proceed solely on the basis of an alleged contract for payment of a 6 percent commission.

Dorsey contends, and the trial court evidently agreed, that the evidence presented at the second trial was not materially different from the evidence presented at the first, with the result that this court's prior decision in the case must be deemed conclusive on the issue of whether Harrison became contractually obligated to pay a 6 percent commission. Harrison, on the other hand, contends that the evidence presented at the two trials was materially different in that there was some evidence at the first trial suggesting that he had accepted additional services from Glenn subsequent to the showing, whereas there was no such evidence at the second trial.

In the first trial, Dorsey introduced into evidence a letter he had written to Harrison in which he expressed the understanding that Harrison had continued to utilize Glenn's services after the showing by "ask[ing] [Glenn] for house plans, which [Glenn] secured." It was quite evidently on the basis of this purported conduct that this court reached the conclusion in the previous appearance of the case that a contract to pay a commission was implied by the parties' conduct as a matter of law. See *Dorsey v. Harrison*, supra at 779. During the second trial, however, this letter was excluded, and it was established that the request for the plans had been made by Harrison's wife rather than by Harrison himself. Although Harrison acknowledged having viewed the plans after his wife procured them, there was consequently no evidence at the second trial which could in any way be construed as conflicting with his testimony that he had no further personal involvement with Glenn whatever subsequent to the showing. Additionally, we note that Glenn acknowledged during the second trial that he did not explicitly tell Harrison that he was expecting him, as purchaser, to pay the commission on the sale until the showing had taken place. Finally, we note, in passing, that Glenn further acknowledged during the course of the second trial that the total amount of time he had expended on the transaction was only five or six hours, meaning that Harrison's offer to pay Dorsey $5,000 for Glenn's services represented compensation at the rate of approximately $1,000 per hour. *Held*:

1. We believe the jury would have been authorized to infer from the evidence introduced at the second trial both that Harrison had no direct involvement in the procurement of the house plans from Glenn subsequent to the showing and that he was not responsible for his wife's actions in this regard. Moreover, we do not, under the circumstances, regard the mere fact that Harrison viewed the plans after his

wife procured them as being sufficient to establish his acceptance of Glenn's terms as a matter of law. Consequently, we conclude that the evidence presented at the second trial of this case was materially different from the evidence presented at the first, with the result that the jury's verdict in the second trial is not at odds with the prior judgment of this court. The "law of the case" rule (see OCGA § 9-11-60 (h)) prevents the re-adjudication of factual issues in a case only where the evidentiary posture of the case has not changed since the prior adjudication was made. See *Modern Roofing &c. Works v. Owen*, 174 Ga. App. 875 (1) (332 SE2d 14) (1985). "Thus, if subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that such change would otherwise mandate." Id. at 876. Having concluded that the evidence presented at the second trial did not demand a finding that Harrison entered into an agreement with Glenn, explicitly or implicitly, to pay a 6 percent commission on the purchase of the house, we accordingly hold that the trial court erred in granting Dorsey's motion for judgment notwithstanding the verdict.

2. In his cross-appeal, Dorsey contends that the trial court erred in denying his motion for summary judgment. However, it is well settled that the denial of a motion for summary judgment becomes moot after the case has proceeded to resolution by trial. See *Mallory Realty Co. v. Jones*, 163 Ga. App. 6, 7 (1) (292 SE2d 463) (1982); *Rich v. Strickland*, 168 Ga. App. 107, 108 (308 SE2d 206) (1983). Harrison's motion to dismiss the cross-appeal is accordingly granted.

*Judgment reversed in Case No. 75163; appeal dismissed in Case No. 75164. Carley and Benham, JJ., concur.*

DECIDED OCTOBER 21, 1987 —
REHEARING DENIED NOVEMBER 17, 1987 —

*John A. Chandler, Kimberly L. Woodland*, for appellant.
*Paul H. Anderson*, for appellee.