A98A0298. GIPSON et al. v. PHILLIPS et al.
(501 SE2d 570)

ANDREWS, Chief Judge.

This case is before us on appeal from the trial court's denial of the Gipsons' motion for directed verdict on the issue of lost profits. Because we find there was sufficient evidence of lost profits to go to the jury, we affirm the judgment of the trial court.

"A directed verdict is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict." (Citations and punctuation omitted; emphasis in original.) *Fouts v. Builders Transport*, 222 Ga. App. 568, 577 (474 SE2d 746) (1996). "In determining whether the trial court erred by denying appellants' motions for a directed verdict . . . this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict." *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (392 SE2d 268) (1990). The standard of review on appeal from the denial of a motion for directed verdict is the "any evidence" standard. *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821 (354 SE2d 6) (1987).

Here, the evidence at trial was that Ms. Gipson hit the rear end of Phillips' van while he was stopped at a red light. Gipson's car hit Phillips' van with enough force to wedge her car under the van and require a wrecker to detach them. There was evidence of damage to the van and injuries to Phillips' neck and back.

On the issue of lost profits, Phillips testified as follows: "Q. What kind of odd jobs did you do after you retired? A. Well I paint signs, I build cabinets, do hang doors, do landscaping, grading work. Q. Do you have any grading equipment that you use? A. Yes, sir. Q. What kind of equipment do you have? A. A John Deere 450 front end loader, and an International backhoe. . . . Q. Now back before this

happened were you getting paid for doing odd jobs? A. Yes, sir. Q. About how much were you making on a weekly basis? . . . [H]ow much do you think you were bringing home? A. I'd say about $750 a week. Q. And after you take all those expenses out, about how much do you think you would clear in profit? A. Well maybe $250."

Mrs. Phillips testified that she was the one who handled the money and paid the bills. When asked whether the $250 a week figure was accurate, she replied, "That's about accurate, yes. Some weeks it might be a little more, some less." She stated that after the collision the amount of money her husband was able to bring in was "[p]retty much nothing." Mrs. Phillips said her husband's inability to work lasted for approximately a year and a half.

This was sufficient evidence from which the jury could determine probable lost profits. "It may be stated as a general rule that in tort actions a recovery may be had for loss of profits, provided their loss is the proximate result of the defendant's wrong and they can be shown with reasonable certainty. The profits recoverable in such cases are limited to probable, as distinguished from possible benefits." (Punctuation omitted.) *Ga. Grain Growers Assn. v. Craven*, 95 Ga. App. 741, 747 (98 SE2d 633) (1957). However, mere difficulty in fixing the exact amount of the lost profits when this loss is proximately caused by the alleged injury does not constitute a legal obstacle to their recovery, provided that "the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted." (Punctuation omitted.) *Johnston v. Lyon*, 173 Ga. App. 524, 525 (327 SE2d 519) (1985).

Here, both Mr. and Mrs. Phillips testified that Mr. Phillips cleared about $250 a week doing odd jobs and grading work. Mrs. Phillips testified that after his accident, Mr. Phillips earned almost nothing for approximately a year and a half. Accordingly, the Phillips carried their burden of showing the loss in such a way that the jury could calculate the amount without basing their finding on guesswork or speculation. *Mathis v. Copeland*, 139 Ga. App. 68, 69 (228 SE2d 23) (1976).

Moreover, even if we were to find the evidence was insufficient to provide a basis for calculating lost profits, reversal is not required where the trial court properly charged the jury that lost earnings were recoverable "where the evidence shows with a reasonable certainty the amount of the loss." *Williams v. Adams*, 170 Ga. App. 35, 36 (316 SE2d 1) (1984), citing *Summerfield v. Decinque*, 143 Ga. App. 351, 353 (238 SE2d 712) (1977). This is especially important here, where the jury awarded all damages in a lump sum verdict: $40,000 to Mr. Phillips and $10,000 to Mrs. Phillips on her loss of consortium claim. This lump sum award was within the range of the evidence at trial which showed property damage to the van, medical bills, pain

and suffering, and Phillips' inability to work around the house and yard and care for the animals. Further, the Gipsons did not object to the form of the verdict, nor did they request an apportionment of damages at trial. Thus, they have waived any possible irregularity in the verdict. *Williams*, supra at 36-37.

Therefore, because there was evidence as to probable lost profits and because the lump sum verdict was within the range of the evidence, we cannot say it was improper. Accordingly, we will not disturb the judgment of the trial court. *Johnston*, supra at 526; *Williams*, supra at 37; *Southern Crate &c. Co. v. McDowell*, 163 Ga. App. 153, 155 (293 SE2d 541) (1982); *Summerfield*, supra at 353.

*Judgment affirmed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 14, 1998.

*Sharon W. Ware & Associates, Jane N. Wilkes, Scott K. Spooner*, for appellants.

*Finch, McCranie, Brown & Hendrix, Andrew T. Rogers*, for appellees.